UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ASHLEY KELLY, *individually and on behalf of all others similarly situated*, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 4:25-CV-1592-ZMB |
| ARROW SENIOR LIVING MANAGEMENT, LLC, *et al*, | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Before this Court is Plaintiff Ashley Kelly's Motion for Approval of Settlement, Doc. 91. Because Kelly has met her burden to certify a collective class action for purposes of settlement and the proposed settlement agreement appears to be fair, the Court grants her motion.

**BACKGROUND**

## I. Factual Background

From July to December 2024, Kelly worked for Defendant Arrow Senior Living Management, LLC from as a non-exempt, hourly employee at a base rate of $34.34 per hour. *Id.* ¶¶ 12–13. In addition to Kelly's base rate, Arrow incorporated other routine and non-discretionary payments into its compensation structure. *Id.* ¶ 14. These payments included retention and shift-differential pay, *id.*, which are included when calculating an employee's "regular rate of pay." *Id.* ¶ 19. As non-exempt, hourly employees, Kelly and others like her were entitled to overtime pay at the rate of one-and-a-half times the calculated regular rate of pay. *Id.* ¶ 17.

Throughout her employment, Arrow allegedly underpaid Kelly due to its failure to account for shift-differential pay when calculating its employees' regular rate of pay. *Id.* ¶¶ 15, 24. Kelly

also claims that she and other hourly employees were deprived of proper overtime pay because Arrow failed to account for shift-differential pay and other non-discretionary renumeration when calculating the regular rate of pay. *Id.* ¶ 26.

## II. Procedural Background

On October 27, 2025, Kelly filed a Collective Action Complaint alleging violations of the Fair Labor Standards Act (FLSA). Doc. 1. Several months after the complaint was filed, the parties filed a joint Stipulation to Stay Case and Toll the Statute of Limitations of FLSA Collective Members. Doc. 50. The next day, the Court construed the parties' stipulation as a joint motion and stayed the case. Doc. 89. In May 2026, Kelly filed a Joint Notice of Settlement. *See* Doc. 90. Shortly thereafter, Kelly filed an Unopposed Motion for Approval of Settlement. *See* Doc. 91.

## LEGAL STANDARD

The Eighth Circuit has never expressly determined that settlements of FLSA claims require court approval but has "assumed without deciding that the district court has a duty to exercise some level of review of the Agreement and the attorneys' fee award." *Melgar v. OK Foods*, 902 F.3d 775, 779 (8th Cir. 2018). Before approving a settlement agreement in a case brought under section 216(b) of the FLSA, a district court must "determine[]that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties." *Brown v. Reddy ICE Corp.*, No. 4:14-CV-1786-RLW, 2016 WL 2930933, at *3 (E.D. Mo. May 19, 2016) (citations omitted). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement in order to promote the policy of encouraging settlement of litigation." *Grove v. Meltech, Inc.*, 2022 WL 119180, at *2 (D. Neb. Jan. 12, 2022). "Typically courts rely on the adversarial nature of a litigated FLSA case resulting in an arms' length settlement as indicia of fairness." *Id.*

## DISCUSSION

Kelly asks this Court to (1) certify the proposed collective action for settlement purposes and (2) approve the parties' Settlement Agreement and Release. Because Kelly has met her respective burden for each request, the Court grants her motion.

### I. Limited Certification of the Collective Action

First, the Court must determine whether to certify the collective action. "District courts within the Eighth Circuit use a two-step analysis to determine whether employees are 'similarly situated' for purposes of an FLSA collective." *Johnson v. Himagine Sols.*, No. 4:20-CV-574-SPM, 2021 WL 2634669, at *3 (E.D. Mo. June 25, 2021). "The first step is the 'notice stage,' in which plaintiffs seek early conditional class certification and notify potential class members of the case." *Brown*, 2016 WL 2930933, at *1 (citation omitted). "The second step is the 'merits stage' and occurs when the defendant moves to decertify the class, typically after the close of discovery." *Id.* (citation omitted). "Where, as here, the plaintiffs did not move for conditional certification before they agreed to settle the case, the Court may consider both steps at the same time." *Knighten v. Drury Hotels Co.*, No. 4:24-CV-666-SEP, 2025 WL 2771477, at *2 (E.D. Mo. Sept. 29, 2025) (citation omitted).

#### *a. Notice Stage*

Kelly's burden at the notice stage "is not onerous." *Getchman v. Pyramid Consulting, Inc.*, No. 4:16-CV-1208-CDP, 2017 WL 713034, at *4 (E.D. Mo. Feb. 23, 2017) (citation omitted). Indeed, conditional certification requires nothing more than substantial allegations that the putative class members were together the victims of a single decisions, policy or plan." *Id.* (quotation omitted).

Here, the Complaint alleges that Kelly and other employees were victims of Arrow's policy of refusing to pay its employees their earned overtime compensation. Doc. 91 at 6; Doc. 1 ¶¶ 35, 40, 50. Kelly's allegations are sufficient to satisfy her burden at the notice stage.

***b. Merits Stage***

Kelly similarly meets her burden at the merits stage. "The second step is the 'merits stage' and occurs when the defendant moves to decertify the class, typically after the close of discovery." *Brown*, 2016 WL 2930933, at *2 (citation omitted). "At the merits stage, the Court 'makes a factual determination on the similarly situated question.'" *Johnson*, 2021 WL 2634669, at *3 (citation omitted). In doing so, "a court considers several factors, including (1) the extent and consequences of disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) other fairness and procedural considerations." *Knighten*, 2025 WL 2771477, at *2 (citation omitted).

Kelly analyzes each of these factors in her motion for approval. Doc. 91 at 6–7. She asserts that that the relevant employees were subject to similar timekeeping and payroll practices, which alone is a sufficient commonality to satisfy the first factor. *Id*. at 6. Kelly further avers that the second factor "weighs in favor of certification" due to the broadly applicable nature of Defendants' defenses to collective action members. *Id*. Finally, she argues that the third factor supports certification as "a collective action will permit several thousand employees to effectively pool their resources for litigation." *Id*. at 7. After due consideration, the Court finds that Kelly has met her burden of showing that the other members of the collective action would be similarly situated. Accordingly, the Court certifies the collective action for settlement purposes.

## II. Approval of the Settlement Agreement

The Court also must consider whether the settlement agreement is fair. When approving settlements of this kind, this Court must determine if there is a *bona fide* dispute and if the proposed settlement is fair. *Crawford*, 2026 WL 1004494, at *2 (citation omitted). The Court finds both that Kelly has met both elements.

### *a. The litigation represents a bona fide dispute.*

The Court first finds that this case involves a real dispute. This requirement is satisfied where a settlement "reflects a reasonable compromise over issues actually in dispute, since employees may not waive their entitlement to minimum wage and overtime pay under FLSA." *King v. Raineri Constr.*, No. 4:14-CV-1828-CEJ, 2015 WL 631253, at *2 (E.D. Mo. Feb. 12, 2015) (citation omitted). Here, the Complaint alleges Arrow's failure "to include shift differential pay and other incentive pay in the regular rate of pay." Doc. 91-3 ¶ 16. Arrow disputed those claims, asserting "numerous legal and factual defenses" during settlement negotiations. *Id.* ¶ 25. And despite agreeing to settle, Arrow "expressly denied and continue[s] to deny the allegations contained in the Lawsuit" or that they "engaged in any unlawful conduct" Doc. 91-1 at 1–2. Considering these assertions, this Court finds that the litigation represents a bona fide dispute.

### *b. The settlement is fair and equitable.*

Next, the Court must determine whether the settlement is fair and equitable. Various factors may be relevant for this inquiry, including:

> (1) the stage of the litigation and the amount of discovery exchanged, (2) the experience of counsel, (3) the probability of the plaintiff's success on the merits, (4) any overreaching by the employer in the settlement negotiations, and (5) whether the settlement is the product of arm's length negotiations between represented parties based on the merits of the case.

*Johnson*, 2021 WL 2634669, at *4 (citation omitted). "In reaching a determination, courts 'should be mindful of the strong presumption in favor of finding a settlement fair.'" *Tanner v. Empire Fin.,*

*Co.*, 4:19-CV-825-SEP, 2020 WL 7316115, at *1 (E.D. Mo. Dec. 11, 2020) (citation omitted). Here, all five factors cut in favor of approving the settlement.

First, the stage of litigation and the amount of discovery exchanged favor settlement. "The essential considerations [here are] whether the parties have exchanged sufficient information to evaluate their claims and to allow the parties to engage in meaningful settlement discussions—this requires no formal discovery." *Netzel v. W. Shore Grp.*, 2017 WL 1906955, at *5 (D. Minn. May 8, 2017). As noted above, the parties requested and the Court entered a stay to permit informal discovery. *See* Doc. 89; Doc. 91 at 2. Arrow produced payroll and timekeeping data to Kelly, Doc. 91 at 2; Doc. 91-3 ¶ 17, who then retained a third-party expert who used that data "to prepare a detailed damages model for use in settlement negotiations," Doc. 91-3 ¶ 17. The Court finds that the parties have conducted enough discovery to sufficiently evaluate their claims and engage in meaningful settlement negotiations. As such, the first factor goes in favor of the settlement.

The second factor also weighs in favor of approval. Kelly's lead counsel appears to be a highly experienced wage-and-hour litigator. Doc. 91-3 ¶ 9. Moreover, she is involved in scholarly pursuits revolving around wage-and-hour law. *See* Doc. 91-3 ¶ 12.

Similarly, the third factor—the probability of the plaintiff's success on the merits—again supports approval. While Kelly's counsel acknowledges Arrow's "numerous legal and factual defenses," she notes that she "takes issue with the viability of some of these defenses" and believes in her "ability to prosecute the collective action strategy." Doc. 91-3 ¶¶ 22, 25(a-d). Nevertheless, she emphasizes that the "risks associated with the continuous litigation . . . cannot be disregarded" and that "settling this case now saves the Parties from years of litigation and tremendous uncertainty as to the ultimate outcome." Doc. 91-3 ¶ 26. Given these considerations, the third factor also weighs in favor of settlement.

Fourth, there are no facts in the record indicating overreach by the employer during settlement negotiations. Doc. 91 at 11. As such, this factor weighs in favor of approval.

Last, it appears that the settlement agreement was the product of arm's length negotiations between the parties. Where parties are represented by counsel, courts nearly always find that the settlement is the product of arms-length negotiations. *Netzel*, 2017 WL 1906955, at *6. Both parties here were represented by counsel from the outset of litigation and throughout settlement negotiations. Doc. 91-3 ¶ 32. Accordingly, because all five factors weigh in favor of approval, the Court finds that the settlement would be fair and equitable to the parties.

## III. Approval of Ancillary Provisions of the Settlement Agreement

Beyond the broader agreement, the Court must also examines various ancillary provisions of the Settlement Agreement, including the distribution plan, service payments, and attorney fees proposed by Kelly.

### *a. The proposed distribution plan is fair and adequate.*

First, the Court approves the proposed distribution plan contained in the Parties' settlement agreement and the appointment of Atticus Administration, LLC as the Settlement Administrator. Doc 91-1 § (A)(12). Atticus Administration, LLC is ordered to perform all of the agreed-upon functions outlined in Section D of the settlement agreement. *Id.* § (D)(1–2).

### *b. The proposed service payments are reasonable.*

Next, the Court looks at the proposed service payment for Kelly. "Service awards, or incentive payments, are routinely awarded in FLSA collective actions." *Netzel*, 2017 WL 1906955, at *7 (collecting cases). "Relevant factors in deciding whether a service award to a named plaintiff is warranted include the actions a plaintiff took to protect class's interest, the degree to which class

has benefitted from those actions, and the amount of time and effort a plaintiff expended in pursuing the litigation." *Id*. (citing *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002)).

Kelly's proposed service award of $1,500.00 is reasonable. According to the motion for approval, Kelly "worked diligently to protect and advocate on behalf of the collective." Doc. 91 at 13. She "also contributed significantly to the settlement of this case, as her role in the exchange of information detailed herein enabled the Parties to determine the proper scope of settlement and her first-hand knowledge proved valuable in allowing the Parties to understand the risks of litigation." *Id*. Kelly's contributions included taking part in multiple interviews and providing records and documentation to her counsel. Doc. 91-3 ¶ 51. The settlement agreement here is proof that the class benefitted from Kelly's actions and that she dedicated sufficient time and effort to warrant an award. Furthermore, the amount requested is reasonable and akin to other service awards granted in this Circuit. *See, e.g.*, *Knighten*, 2025 WL 2771477, at *4 (approval of a $5,000 service payment); *Crawford*, 2026 WL 1004494, at *3 (approval of $5,000 and $2,500 service payments).

***c. The agreed-upon attorney's fees and costs are fair and reasonable.***

Last, the Court examines whether the proposed attorneys' fees and costs are reasonable and appropriate. The FLSA includes a fee-shifting provision. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). "The Court reviews the proposed fee award to determine whether it is fair and reasonable." *Knighten*, 2025 WL 2771477, at *4 (citation omitted). "Where the parties have already agreed upon the fees to be paid, any required review need not be a line-by-line, hour-by-hour review of the attorneys' fees" and must give deference to the parties' agreement. *Melgar*, 902 F.3d at 779. "In assessing the reasonableness of a proposed fee award, the Court may consider factors including (1) the amount involved and the results obtained; (2) whether the fee is fixed or contingent; (3) the novelty and

difficulty of the questions; (4) the experience, reputation, and ability of the attorneys; and (5) awards in similar cases." *Knighten*, 2025 WL 2771477, at *4 (citing *Keil v. Lopez*, 862 F.3d 685, 703 (8th Cir. 2017)) (quotation omitted).

Considering these factors, the Court finds that counsel's request for attorneys' fees is fair and reasonable. Kelly's suit was a complex action, and as noted above, both Kelly and Arrow were represented by competent and experienced counsel. Further, counsel took Kelly's case on a contingency basis and procured "a settlement equal to 103% of Defendant's $135,446 maximum damage exposure." Doc. 91 at 15. Finally, a one-third contingency fee is typical for FLSA settlements in the Eighth Circuit. *See, e.g.*, *Knighten*, 2025 WL 2771477, at *4–5; *Johnson*, 2021 WL 2634669 at *6–7.

The Court also approves Kelly's request for reimbursement of $12,277.86 in costs and expenses necessary to pursue this litigation. Doc. 91 at 17; Doc 91-3 ¶ 53. These costs are reasonable and within the range of those previously approved in this Circuit for FLSA settlements. *See, e.g.*, *Johnson*, 2021 WL 2634669, at *8 (approval of reimbursement of $17,220 in litigation costs); *Knighten*, 2025 WL 2771477, at *5 (same for up to $15,000).

## CONCLUSION

Accordingly, the Court **GRANTS** Plaintiff Ashley Kelly's [91] Unopposed Motion for Approval of Settlement. No later than November 30, 2026, the parties must file a notice of dismissal or a joint motion requesting an extension of time to finalize the settlement detailing how much and why additional time is necessary.

So ordered this 31st day of August 2026.

ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE